**Caroline HARVEST et al., Plaintiffs-Appellees,**

v.

**BOARD OF PUBLIC INSTRUCTION OF MANATEE COUNTY, FLORIDA, a public body corporate, et al., Defendants-Appellants.**

**No. 29425.**

United States Court of Appeals, Fifth Circuit.

March 27, 1970.

Dissenting Opinion March 31, 1970.

See also D.C., 312 F.Supp. 269.

1. See Tables 1 & 2 in the Appendix to this dissent.

David K. Dietrich, Robert L. Scott, Dye, Dye, Smith, Cleary & Scott, Bradenton, Fla., for defendants-appellants.

Earl M. Johnson, Jacksonville, Fla., Jack Greenberg, James M. Nabrit, III, Norman J. Chachkin, Drew S. Days, III, New York City, for Intervenor, et al.

Before JOHN R. BROWN, Chief Judge, and MORGAN and CLARK, Circuit Judges.

PER CURIAM.

It is ordered that the motion of defendants-appellants for a stay of the order of the District Court entered on January 29, 1970 in this cause be and the same is hereby denied.

CLARK, Circuit Judge (dissenting):

The order of the District Court, in the guise of enforcing the Fourteenth Amendment right of Negro citizens to equal protection of law, deprives literally thousands of children of major educational benefits. A proper analysis will disclose that the order does not enforce a right but rather creates a wrong. There is no statutory or constitutional right to enforced racial integration. Yet that is the only "right" that will be conferred by this order, rearranging students so close to the end of a year.

With only 54 days of attendance time left in the 1969–70 school term, young children, wholly without blame, are separated from their classmates or their teachers or their schools, or all three.[1] The only *proof* before this Court shows that the result of this last minute shuffle will be destructive of existing educational values and utterly without a redeeming equity of any sort.[2] The greatest irony of it all is that the impact of what is

2. The affidavits of classroom teachers and other educators were filed in support of the motion to stay. No counter-affidavits or opposition were presented.

enjoined will fall most heavily on the Negro children affected.[3]

It has been advanced as justification for this order that the school district officials have known for some time that such a student change-over could be required. This is not pertinent at all. Even the assumption that these officials had been guilty of deliberate delay could not justify taking rights away from school children. If equity demands that punishment be inflicted, it surely should be fastened on the guilty—not upon the innocent. What is being taken from these children by approving this order is the very right nominally enforced, the right to equal educational opportunity. That right is no longer viable when it is used as a pall to cover what naked could readily be seen as a deprivation of educational benefits.

A large part of the cause of the disheartening failure of court experimentation with school desegregation is that we have fallen into the practice of dealing with statistics. The Manatee County problem we face today cannot be adequately understood or expressed by numbers or percentages. It can only be comprehended in terms of individual lives. We wholesale the "rights" of Susan and Bill and Tommy and nameless thousands of other unknowns. They lose their identity in a complex ocean of faces. Only the color of their skin becomes important to our en masse reasoning. Justice takes on a strange appearance indeed when she takes off her blindfold and weights her scales to be sure, sometimes ten times sure, that the personal rights of each individual robber or murderer have not been brushed or bruised,[4] yet we herd guiltless youngsters about with seeming abandon, never knowing who they are, or what their special problems may be, or what we do to their lives or to the lives of those who love them and are charged with the legal duty to care for them.

Precedent certainly does not justify what the majority here allows to stand. No school district has ever been disrupted at this late a point in a school term. In fact, this very court has already recognized that the immediate desegregation requirement of the Supreme Court[5] does not have to blind us to the educational realities resulting from its application to specific school situations. In Hall v. St. Helena Parish School Board, 424 F.2d 320 (5th Cir. 1970), we refused interdiction of the term in that school district, which had approximately five weeks remaining for elementary students, and permitted compliance to begin at the 1970–71 term. The difference between the St. Helena Parish and Manatee County cases is not one of principle but of degree, and only slight degree at that.

Based on the facts of record before us I would, without the slightest hesitation, grant the stay requested for the short duration of the present school term. It may be that all of the parties to this action will agree that it would be unwise to effectuate this order at this point in time. If they do then the school session could be completed without disruption, for after all it is their lawsuit and they may waive this court-fashioned "relief" if neither side really wants it. If they do not, I can only hope that when history records the results of this Easter edict it will show that somehow all the children affected, both Negro and white, suffered less damage than I now anticipate.

3. According to the affidavit of Professor of Education, Dr. Virgil Strickland (Ph.D.)

4. We would allow any common criminal repeated trials, appeals, post conviction remedies and multiplied State and Federal habeas corpus review. *See e. g.* Vera v.

Beto, 422 F.2d 1052 (5th Cir. 1970) [February 20, 1970].

5. Alexander v. Holmes County Bd. of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19 (1969) ; *See also* Carter v. West Feliciana Parish School Board, 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970).

APPENDIX

TABLE 1 — Students By Grade Who Are Required to Change Teachers, Change Class Membership or to Change Schools.

| SCHOOL | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Anna Maria | | | | | | 32 | ɩ | | 32 |
| Ballard | | | | | 32 | 33 | | | 65 |
| Bayshore Elem. | 79 | 62 | 86 | 77 | 75 | 75 | | | 454 |
| Bradenton | 130 | 88 | 96 | 103 | 97 | | | | 514 |
| Daughtrey | 92 | 79 | 90 | 82 | 86 | 100 | | | 529 |
| Ellenton | 28 | 35 | 34 | 33 | 25 | | | | 155 |
| Manatee | | | | | 30 | 60 | | | 90 |
| Memorial | 107 | 101 | 98 | 76 | 96 | 85 | | | 563 |
| Miller | 99 | 84 | 94 | 64 | 82 | 86 | | | 509 |
| Orange Ridge | | | | | 25 | 35 | | | 60 |
| Palm View | | | | | 24 | | | | 24 |
| Palma Sola | 79 | 88 | 86 | 96 | 97 | 89 | | | 535 |
| Palmetto | 86 | 101 | 108 | 71 | 95 | 129 | | | 590 |
| Parrish | 35 | 43 | 27 | 22 | 22 | | | | 149 |
| Prine | 68 | 71 | 89 | 91 | 89 | 100 | | | 508 |
| Samoset | 64 | 71 | 65 | 68 | 66 | 54 | | | 388 |
| Tillman | 45 | 58 | 49 | 53 | 57 | 61 | | | 323 |
| Bayshore Middle | | | | | | | 325 | 325 | 650 |
| First St. Middle | | | | | | | 300 | 300 | 600 |
| Lincoln | | | | | | | 167 | 148 | 315 |
| Palmetto High | | | | | | | 195 | 218 | 413 |
| TOTALS | 912 | 881 | 922 | 836 | 998 | 939 | 987 | 991 | 7,466 |

Source: 5th Month Attendance Report - Manatee County School District January 9 - February 6, 1970
[A1643]

TABLE 2
Students by Grade Moved to Another School

| SCHOOL | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Bayshore | | | | | 75 | 75 | | | 150 |
| Bradenton | 130 | 88 | 96 | 103 | | | | | 417 |
| Daughtrey | | | | | 86 | 100 | | | 186 |
| Ellenton | | | | | 25 | | | | 25 |
| Lincoln | | | | | | | | 148 | 148 |
| Memorial | 107 | 101 | 98 | 76 | | | | | 382 |
| Miller | | | | | 82 | 86 | | | 168 |
| Palma Sola | | | | | 97 | 89 | | | 186 |
| Palmetto | | | | | 95 | 129 | | | 224 |
| Palmetto High | | | | | | | 195 | | 195 |
| Parrish | | | | | 22 | | | | 22 |
| Prine | | | | | 89 | 100 | | | 189 |
| Samoset | | | | | 66 | 54 | | | 120 |
| Tillman | 45 | 58 | 49 | 53 | | | | | 205 |
| TOTALS | 282 | 247 | 243 | 232 | 637 | 633 | 195 | 148 | 2617 |

[A1644]